IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION FILE |
| BABAJIDE ADESAYO, | NO. 1:24-CR-154-MHC-RGV-3 |
| Defendant. | |

## ORDER

Defendant Babajide Adesayo ("Adesayo") has been charged in a multi-count indictment with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Seventeen), and fifteen counts of money laundering in violation of 18 U.S.C. § 1957 (Counts Eighteen through Thirty-Two). First Superseding Criminal Indictment [Doc. 8]. This action comes before the Court on the Report and Recommendation ("R&R") of the United States Magistrate Judge [Doc. 94] recommending the denial of Adesayo's Motions to Suppress Evidence Allegedly Obtained from a Border Search [Docs. 68, 81], and Motion to Suppress Evidence Seized from the Warrantless Searches of Cell Phones [Doc. 69].

The Order for Service of the R&R [Doc. 95] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. After receiving an extension

of time to do so [Doc. 98], Adesayo has filed his Objections to the R&R ("Def.'s Objs.") [Doc. 99].

## I. LEGAL STANDARD

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (citations omitted). Moreover, "a party does not state a valid objection to an R&R by merely incorporating by reference previous filings." Hammonds v. Jackson, No. 13-CV-711-MHS, 2015 WL 12866453, at *6 n.2 (N.D. Ga. May 18, 2015); see also Morrison v. Parker, 90 F. Supp. 2d 876, 878 (W.D. Mich. 2000) ("Plaintiffs' general, nonspecific objections, purporting to incorporate by reference their earlier

brief, are tantamount to no objection at all and do not warrant further review.") (citations omitted).

Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Ortiz objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

**II.   DISCUSSION**

    **A.   Motions to Suppress Evidence Obtained from a Border Search**

        **1.   Factual Summary**

Prior to April 19, 2022, Homeland Security Investigations ("HSI") Special Agent Arthur Thomas Morrison III ("Morrison") and Federal Bureau of Investigations Special Agent Joel Zwiers ("Zwiers") conducted a fraud investigation of which Adesayo was a target. Transcript of Evidentiary Hr'g (May 14, 2025) ("Tr.") [Doc. 80] at 8-9, 21, 24. On April 19, 2022, Morrison knew that Adesayo would be arriving on an international flight from Nigeria into Hartsfield-

Jackson International Airport in Atlanta, Georgia, based on the passenger manifest. Id. at 9, 23. Morrison requested that Adesayo be referred for a secondary inspection by United States Customs and Border Protection, which inspection was assigned to Officer William Graham ("Graham"). Id. at 24-25. Morrison advised Graham to search Adesayo's bags for financial documents and electronic devices which could contain evidence of fraudulent activity. Id. at 9-10, 25-26.

Adesayo was encountered in the baggage area and escorted to a secure area where Graham inspected Adesayo's baggage. Id. at 10-11, 14-15. Graham removed several cell phones and turned them over to Morrison. Id. at 11, 15, 26. Morrison took the devices, met with Adesayo, and advised Adesayo that the devices would be examined and returned to him at a later date. Id. at 26-27. Adesayo was then admitted into the United States and allowed to leave the airport. Id. at 20. Morrison explained why did not attempt to search the electronic devices at the airport and instead took them to be searched at the HSI field office located a few miles from the airport:

> Q. OKAY. NOW, DID YOU ATTEMPT TO SEARCH HIS ELECTRONIC DEVICES ON THE SPOT AT THE AIRPORT?
>
> A. I DID NOT.
>
> Q. AND WHY WAS THAT?

4

> A. SO AT THE TIME WHEN I WAS AT THE AIRPORT, I WAS GIVEN A LITTLE BIT OF TRAINING IN HOW TO DO THE FORENSIC EXAMS. AND WE ALSO HAD THE COMPUTERS TO DO THOSE EXAMS, BUT THEY WERE LIMITED, AND WITH MULTIPLE DEVICES AND WITH THE SIZES OF THE STORAGE IN THE DEVICES, IT WAS JUST MUCH FASTER IF I REQUEST ASSISTANCE FROM THE COMPUTER FORENSIC DIVISION AND WE WOULD TAKE THOSE DEVICES TO THE S.A.C. OFFICE AND HAVE THEM DO THE EXAMINATION.
>
> Q. OKAY. NOW, WHEN YOU SAY THE S.A.C. OFFICE, IS THAT LIKE THE HSI FIELD OFFICE?
>
> A. IT IS, YES, MA'AM.
>
> Q. IS THAT OFFICE LOCATED CLOSE TO THE ATLANTA AIRPORT?
>
> A. YES, MA'AM. IT'S A FEW MILES AWAY.

Id. at 27; see also Tr. at 30, 33 (Morrison acknowledging that he took the electronic devices to the HIS field office for extraction of the information, and "getting the phones back pretty quick."). Morrison returned the devices to Adesayo after the completion of the forensic examination. Id. at 27.

   2.   **Discussion**

In the R&R, the Magistrate Judge concluded that the search of Adesayo's electronic devices constituted a valid border search, that the border search of the cell phones was "continuous," and the fruits of the search should not be suppressed because a border search is an exception to the requirement for a search warrant.

5

R&R at 10-15. The Magistrate Judge also found that, even if the search was not a valid border search, officers possessed an objective good-faith belief that their conduct did not violate the Fourth Amendment. Id. at 16-17. Adesayo objects to the recommendation, contending that the search of the electronic devices did not occur "at the functional equivalent of the border" and there was no evidence as to who actually conducted the search. Def.'s Objs. at 2-6. Adesayo also objects to the application of the good-faith exception. Id. at 6-7.

The Fourth Amendment provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The Fourth Amendment protects citizens from random government intrusion on their privacy.

One significant exception to the Fourth Amendment's restrictions occurs at the country's borders. Routine searches of travelers and their belongings at an international border "are not subject to any requirement of reasonable suspicion, probable cause or warrant. . . ." United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985); see also United States v. Touset, 890 F.3d 1227, 1233-34 (11th

Cir. 2018) (holding that forensic searches of a person's electronic devices at the border, as opposed to intrusive searches of a person's body, do not require reasonable suspicion). Customs agents have been given broad authority to search vehicles and persons upon their entry into the United States, including their personal effects, to prevent unlawful merchandise from being brought into the United States. See United States v. Flores-Montano, 541 U.S. 149, 152 (2004) ("The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border."); United States v. Alfaro-Moncada, 607 F.3d 720, 728 (11th Cir. 2010) ("At the border, an individual has a lesser expectation of privacy, the government has a greater interest in searching, and the balance between the interests of the government and the privacy right of the individual is struck more favorably to the government.").

Border searches may be conducted at an international border checkpoint or its functional equivalent. Almeida-Sanchez v. United States, 413 U.S. 266, 272-3 (1973). An airport is considered the functional equivalent of a border. United States v. Richards, 638 F.2d 765, 771 (5th Cir. 1981).[1] Courts define "functional

---

[1] In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to October 1, 1981.

7

equivalent" as the first practical detention point after a border crossing or the final point of entry. United States v. Hill, 939 F.2d 934, 938 (11th Cir. 1991). The only difference between a border search and a functional equivalent search is the location of the search and the requirement that the subject of the search is known to have remained unaltered from the time of its crossing through the period before the search. The functional equivalent of the border is defined by the circumstances of the search rather than its mere location. United States v. Garcia, 672 F.2d 1349, 1361 n.20 (11th Cir. 1982).

> A search within the border may also be justified as a border search requiring no warrant nor any suspicion if there is reasonable certainty that the object or person searched has just crossed the border, there has been no time or opportunity for the object to have changed materially since the time of crossing, and the search is conducted at the earliest practicable point after the border was crossed.

Id., 672 F.2d at 1363-64.

Adesayo does not dispute that the first element, that the electronic devices in question crossed the border, but argues that there was opportunity for the devices to have changed materially after the crossing and the search was not conducted at the earliest practicable point. This Court disagrees.

As to the second element, in Richards, 638 F.2d at 772, the former Fifth Circuit[2] noted that, in regard to border searches, the government must establish that the object searched was in the same condition as when it crossed the border. The Fifth Circuit further noted that this requirement could be met by showing that "the object searched was subject to constant surveillance from the time it crossed the border or that, under the circumstances, the contraband was not likely to have been introduced during any breaks in the surveillance." Id. Given the testimony of Morrison that he took possession of Adesayo's electronic devices, delivered them to the HSI field office located only a few miles away, and regained possession of the devices "pretty quickly," the Court finds that, under the circumstances, it was unlikely that the devices contents could have been manipulated while in the possession of the field office. See also United States v. Ramos, 645 F.2d 318, 321 (5th Cir. 1981) ("The government is not required to negate every hypothetical possibility as to how the contraband may have been obtained subsequent to the border crossing. . . . [T]he mere assertion by the defendant that there was the opportunity to obtain the contraband after the border crossing is insufficient to controvert the facts established by the government.").

---

[2] See n.1, *supra*.

The Court also finds that the search of the phone was performed at the earliest practical point once it was inside the United States. Morrison testified that it was more expeditious to perform the data extraction at HSI's field office just a few miles away from the airport given his limited training and technological issues with using computers at the airport. Tr. at 27-33. This is very similar to the facts in United States v. Falzone, No. 8:23-CR-351-VMC-SPF, 2024 WL 4164723 (M.D. Fla. July 29, 2024), R&R adopted, No. 8:23-CR-351-VMC-SPF, 2024 WL 3964089 (M.D. Fla. Aug. 28, 2024). In Falzone, because of technological issues existing at the point of entry, government agents transported the defendant's cell phone to HSI's Tampa office, which was 140 miles from the border, and the search occurred two days later. "Given the lack of technology at Port Canaveral, the forensic search of Falzone's phone occurred at the earliest practical point after the border was crossed." Falzone, 2024 WL 4164723, at *5; see also United States v. Stewart, 729 F.3d 517, 525 (6th Cir. 2013) ("The follow-up, non-forensic examination of the Twinhead computer occurred one day later at a field office twenty miles away from the airport. A routine border search of a laptop computer is not transformed into an 'extended border search' simply because it is transported twenty miles beyond the border and examined within twenty-four hours of the initial seizure."). In this case, the search of Adesayo's cell phones was performed

10

only a few miles from the airport and done more expeditiously than the searches upheld in Falzone and Stewart.

Even if the warrantless search of Adesayo's cell phones was somehow deficient, the Court finds that the good faith exception would apply to justify the denial of the Motions to Suppress. As stated by the Supreme Court in Davis v. United States, 564 U.S. 229, 241 (2011), "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." It is binding precedent that the border search exception to the warrant requirement applies at a border checkpoint or its functional equivalent. Almeida-Sanchez, 413 U.S. at 272-73. Adesayo points to no binding authority which states that moving an electronic device from the airport to a HSI field office for the information to be extracted violates the Fourth Amendment. See United States v. Touray, No. 1:20-CR-103-TWT-LTW, 2021 WL 6066101, at *12 (N.D. Ga. Sept. 3, 2021), R&R adopted, No. 1:20-CR-103-TWT-LTW, 2021 WL 5195645 (N.D. Ga. Nov. 8, 2021) (finding that a cell phone recovered during a border search at the airport and sent by HSI to a different location for the forensic search to be conducted is not impermissible and covered by the good faith exception); Falzone, 2024 WL 4164723, at *6 (applying the good faith exception in similar circumstances).

Consequently, Adesayo's Objections to the R&R's recommendation that his Motions to Suppress evidence obtained from a border search should be denied are **OVERRULED**.

### B.   Motion to Suppress Evidence Seized from a Search of Adesayo's Cell Phones

#### 1.   Factual Summary

On June 12, 2024, following the issuance of the indictment against Adesayo for money laundering, FBI Special Agent Zwiers submitted an affidavit and application for a search warrant for a search of Adesayo's residence. Affidavit in Support of Search Warrant ("SW Aff.") [Doc. 69-1] ¶ 1. Numerous portions of Zwiers's affidavit include reference to cell phones or electronic devices that could be present in the residence, including:

- Details about the three cell phones detained from the border search which provided additional evidence in the investigation, including images of the co-defendant's driver's license and a check for the co-defendant that was deposited unto Adesayo's back account. Id. ¶¶ 28-29.

- Based on Zwiers's training and experience, Zwiers averred that "there is probable cause to believe that the PREMISES is expected to have

12

- electronic devices owned, used, or controlled by Adesayo" and "[b]ecause several people may share the PREMISES as a residence, it is possible that the PREMISES will contain electronic devices and storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime." Id. ¶¶ 39-40.

- In a section entitled, "Use of Electronic Devices," which were defined to include "cellular telephones," Zwiers detailed why in his experience such devices would be found in a residence and how illegal activities in connection with money laundering activities might appear on the phones or other electronic devices. Id. ¶¶ 41-48.

- Zwiers specifically sought "permission to search for records that might be found in the Electronic Devices, in whatever form they are found. One form in which the records might be found is data stored on the Electronic Device's hard drives or other storage mediums. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Federal Rule of Criminal Procedure 4l(e)(2)(B)." Id. ¶ 43; see also id. ¶ 52 ("[T]his warrant will authorize the removal of electronic storage media and copying of electronically

13

stored information that reasonably appear to contain some or all of the evidence described in the warrant . . . .").

In issuing the search warrant, United States Magistrate Judge Catherine M. Salinas found that the Search Warrant Affidavit established "probable cause to search for and seize the certain property, certain information, and certain data" from Adesayo's residence, incorporated Attachment B to the affidavit, which listed the "[p]roperty to be seized," and included "[e]lectronic devices and storage media used as a means to commit the violations described above." Id. at 39, 42. The warrant also authorized the search of the residence and "all . . . property within the curtilage[.]" Id. at 39. The warrant was executed on June 13, 2024, and the return showed that four cell phones and one computer was seized. Id. at 50.

### 2. Discussion

In recommending denial of Adesayo's motion to suppress evidence obtained from the search of cell phones seized in executing the search warrant, the Magistrate Judge rejected Adesayo's argument that the search warrant merely granted permission to search the residence and not the cell phones, finding that the warrant clearly authorized the search of the contents of electronic media seized, including cell phones, and a second warrant was not required. R&R at 19-23. The

Magistrate Judge concluded that the post-seizure search of the electronic devices did not exceed the scope of the warrant. Id. at 23-24.

Adesayo first objects to "[t]he Magistrate Judge's conclusion that Rule 41(e)(2)(B)'s authorization of the seizure of electronic media pursuant to a warrant implicitly authorizes the search of such media." Def.'s Objs at. 7 (citing R&R at 24). There was no such "conclusion" made by the Magistrate Judge on the cited page. On page 21 of the R&R, the Magistrate Judge cites a district court case in which the following was stated: "Federal Rule of Criminal Procedure 41(e)(2)(B) authorizes a warrant to include seizure of 'electronic storage media or the seizure or copying of electrically stored information,' and 'authorizes a later review of the media or information consistent with the warrant.' A warrant that authorizes the seizure of electronics implicitly authorizes a subsequent search of the electronics." R&R at 21 (quoting United States v. Quinonez, No. 18-20946-CR-ALTONAGA/Goodman, 2020 WL 1526473, at *2 (S.D. Fla. Mar. 31, 2020) (citations omitted)). In this case, the warrant signed by the Magistrate Judge authorized both the seizure and the search of the electronic media in question. See SW Aff. ¶ 52 ("[T]his warrant will authorize the removal of electronic storage media and copying of electronically stored information that reasonably appear to contain some or all of the evidence described in the warrant . . . ."); see also United

15

States v. Beckett, 369 F. App'x 52, 57 (11th Cir. 2010) ("Contrary to Beckett's assertions, the government did not exceed the bounds of the search warrant when they searched the contents of his computers. The affidavits attached to the application for a search warrant of Beckett's house and computers adequately described the objective of the search."); United States v. Fifer, 863 F.3d 759, 766 (7th Cir. 2017) ("[B]y explicitly authorizing the police to seize the electronic devices found in Fifer's apartment, the warrant implicitly authorized them to search those devices as well.").

Adesayo next complains that the Magistrate Judge failed to apply the holding of Riley v. California, 573 U.S. 373 (2014), which he contends always requires a second warrant before a search of an electronic device seized as a result of an initial warrant which "did not specifically authorize" such search. Def.'s Objs at 7-8. But Riley did not involve any search pursuant to a warrant but, instead, a search of a cell phone incident to an arrest for a traffic violation. Riley, 573 U.S. at 378. Riley discusses "how the search incident to arrest doctrine applies to modern cell phones" and stands for the unremarkable conclusion that officers must generally secure a warrant before conducting such a search. Id. at 385-86. Unlike Riley, an actual warrant to search was obtained in this case.

Adesayo also challenges the finding that the search warrant issued in this case included the search of the electronic devices seized, Def.'s Objs. at 8, but, as previously stated, the warrant signed by the Magistrate Judge does just that. See pp. 13-14, *supra*. Finally, Adesayo objects to the Magistrate Judge's finding that suppression of evidence seized from the cell phones would not be warranted because the agents relied in good faith that the warrant authorized such searches. Def.'s Objs. at 10 (citing R&R at 25, n.10). Contrary to Adesayo's allegation, the warrant was not "so facially deficient – *i.e.,* in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." United States v. Robinson, 336 F.3d 1293, 1296 (11th Cir. 2003). The warrant in fact did specifically describe the residence to be searched and the items to be seized and, under the good faith exception set forth in United States v. Leon, 468 U.S. 897 (1984), the agents executing the warrant were entitled to reasonable rely in good faith on its validity and that the evidence seized from the cell phones would not be subject to suppression.

Thus, Adesayo's Objections to the R&R's recommendation that his motion to suppress evidence obtained from a search of his cell phones should be denied are **OVERRULED**.

## III. CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Adesayo objects, the Court **OVERRULES** his Objections [Doc. 99]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 94] as the Opinion and Order of the Court.

It is hereby **ORDERED** that Adesayo's Motions to Suppress Evidence Allegedly Obtained from a Border Search [Docs. 68, 81], and Motion to Suppress Evidence Seized from the Warrantless Searches of Cell Phones [Doc. 69] are **DENIED**.

It is further **ORDERED** that the time between the date the Magistrate Judge certified this case ready for trial on October 27, 2025, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendant's objections to the Report and Recommendation ruling on his pretrial motions to suppress outweigh

the right of the public and the right of the Defendant to a speedy trial, pursuant to 18 U.S.C. § 3161(h)(1)(D).

**IT IS SO ORDERED** this 17th day of December, 2025.

_____
MARK H. COHEN
United States District Judge