**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | :: | |
| | :: | CRIMINAL CASE NO. |
| v. | :: | 1:24-cr-00154-MHC-RGV |
| | :: | |
| BABAJIDE ADESAYO | :: | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Babajide Adesayo ("Adesayo") is charged in a third superseding indictment with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and money laundering, in violation of 18 U.S.C. § 1957. [Doc. 188].[1] Adesayo has filed a motion for speedy trial in which he seeks dismissal of all charges against him based on alleged violations of the Speedy Trial Act and his Sixth Amendment right to a speedy trial, [Doc. 173], which the government opposes, [Doc. 179]. Adesayo has filed a reply in support of his motion, [Doc. 185], and on July 7, 2026, he also filed a motion to dismiss for violation of his Sixth

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

Amendment right to a speedy trial, [Doc. 187].[2] For the reasons that follow, it is **RECOMMENDED** that Adesayo's motions, [Docs. 173 & 187], be **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 2024, a federal grand jury in the Northern District of Georgia returned a first superseding indictment against Adesayo, charging him with one count of conspiracy to commit money laundering and fifteen counts of money laundering. See [Doc. 8].[3] In particular, the first superseding indictment alleged, among other things, that from April 2020 until about September 2021, Adesayo and Igbe received proceeds "from romance scams, perpetrated against individuals located throughout the United States" by utilizing "sham corporate entities," including U&I Automotive, LLC, which was organized by Adesayo,

[2] Adesayo offers no explanation or justification for filing a second speedy trial motion after briefing was completed on his first motion, and the motion essentially repackages arguments advanced in his initial motion and reply. See [Docs. 173 & 185]. There is nothing new in the second motion that could not have been advanced in the first motion, and although the second motion could be denied as duplicative, the Court has considered the arguments advanced by Adesayo in both motions and finds it unnecessary to await further briefing prior to ruling on the motions.

[3] This thirty-two count superseding indictment also was returned against Efemena Igbe ("Igbe") and Kingsley Inegbedion ("Inegbedion"), see [Doc. 8], both of whom were charged in the original criminal indictment returned on May 14, 2024, see [Doc. 1].

that were "established for the purpose of opening fraudulent bank accounts to receive the proceeds of the various fraudulent schemes." [Id. ¶¶ 6, 21-28]. The first superseding indictment also charged that during this time period, Adesayo and Igbe, aided and abetted by each other and by others known and unknown, knowingly engaged and attempted to engage in several monetary transactions through and to a financial institution involving criminally derived proceeds of mail fraud, wire fraud, and bank fraud. [Id. ¶ 30]. Adesayo and his co-defendant Inegbedion were arrested on June 13, 2024, and Adesayo was arraigned on the same day. See [Docket entries dated 06/13/2024; Doc. 20].[4]

On June 25, 2024, the government filed a motion for a protective order, [Doc. 26], and Adesayo filed a motion to continue the pretrial conference which had been scheduled for July 1, 2024, due to defense counsel's conflict in state court, [Doc. 28]; see also [Doc. 25]. On June 26, 2024, the Court granted Adesayo's motion for a continuance for "good cause shown" and rescheduled the pretrial

[4] Inegbedion was arrested in Houston, Texas, and he had his initial appearance in the Southern District of Texas on June 13, 2024, and after the government moved to detain him and a detention hearing was held on June 18, 2024, he was ordered detained and then removed to this district on June 27, 2024. See [Doc. 32]. He had his initial appearance in this district on July 17, 2024. [Doc. 37].

conference for August 6, 2024, [Doc. 30],[5] and on June 28, 2024, it granted the government's motion for a protective order, [Doc. 31].

On August 5, 2024, Adesayo's counsel filed a motion to withdraw, [Doc. 44], and following a hearing on August 13, 2024, Judge McBath granted the motion, [Doc. 46]. On August 14, 2024, Adesayo's newly appointed counsel filed a motion to reopen the time period to file pretrial motions, [Doc. 48]; see also [Doc. 47],[6] and on August 16, 2024, Judge McBath granted this motion for "good cause shown," rescheduled the pretrial conference to October 29, 2024, and ordered that

[5] In this Order, the Honorable J. Elizabeth McBath, United States Magistrate Judge for the Northern District of Georgia, ordered that the "period between the date of the motion to continue, June 25, 2024, and the date of the pretrial conference, August 6, 2024, [] be excluded pursuant to the Speedy Trial Act," since the "ends of justice served by granting the continuance outweigh[ed] the best interest of the public and [ Adesayo] in a speedy trial." [Doc. 30 at 1-2]. Additionally, in an amended order entered on July 31, 2024, Judge McBath granted Inegbedion's motion to continue his pretrial conference and ordered that the period between the date of his motion to continue, July 30, 2024, and the date of the pretrial conference, September 23, 2024, be excluded pursuant to the Speedy Trial Act since the "ends of justice served by granting the continuance outweigh[ed] the best interest of the public and [ Inegbedion] in a speedy trial." [Doc. 43 at 1-2].

[6] In this motion, Adesayo's new counsel explained that because he had been reappointed to the case but had not yet received nor reviewed any of the discovery, he was requesting the pretrial deadline be reopened so that Adesayo may be afforded the opportunity to file pretrial motions in his case and that the time between his motion and the new pretrial conference date should be excluded from Speedy Trial Act calculations. [Doc. 48 at 2-3].

the period between August 14 and October 29, 2024, be excluded under the Speedy Trial Act since the "ends of justice served by granting the continuance outweigh[ed] the best interest of the public and [ Adesayo] in a speedy trial," [Doc. 49 at 1-2].[7] However, on October 15, 2024, Adesayo's counsel filed another motion for an extension of time to file pretrial motions and to continue the pretrial conference based on the need for additional time to discuss options with Adesayo and to review the voluminous discovery and discuss potential pretrial motions, [Doc. 53], which Judge McBath granted for "good cause shown" on October 16, 2024, thereby resetting the pretrial conference for December 3, 2024, and ordering that the time period between October 15 and December 3, 2024, be excluded under the Speedy Trial Act since the "ends of justice served by granting the continuance outweigh[ed] the best interest of the public and [ Adesayo] in a speedy trial," [Doc. 55 at 1-2].[8] Adesayo then filed another motion for an extension of time to

[7] Additionally, on September 13, 2024, Inegbedion filed a motion for an extension of time to file pretrial motions and to continue his pretrial conference, [Doc. 50], which Judge McBath granted on September 16, 2024, thereby rescheduling his pretrial conference for November 4, 2024, and ordering that the period between September 13 and November 4, 2024, be excluded pursuant to the Speedy Trial Act since the "ends of justice served by granting the continuance outweigh[ed] the best interest of the public and [ Inegbedion] in a speedy trial," [Doc. 51 at 1-2].

[8] Inegbedion entered a guilty plea on November 13, 2024, [Doc. 59], and he was sentenced on February 19, 2025, [Doc. 74]; see also [Doc. 123].

file pretrial motions and to continue the pretrial conference on November 27, 2024, explaining that the discovery contained "over 1 terabyte of data . . . and include[d] numerous unscheduled bank account returns, PDFs, word documents, video and audio files, and several phone dumps" and counsel needed additional time to review the discovery and discuss pretrial motions with Adesayo, [Doc. 61 at 1-2], which Judge McBath granted for "good cause shown" on the same day, resetting the pretrial conference for January 29, 2025, and ordered that the time period between November 27, 2024, and January 29, 2025, be excluded under the Speedy Trial Act since the "ends of justice served by granting the continuance outweigh[ed] the best interest of the public and [ Adesayo] in a speedy trial," [Doc. 62 at 1-2].

On January 27, 2025, Adesayo filed a preliminary motion to suppress evidence obtained from a border search conducted on April 19, 2022, [Doc. 68], and a motion to suppress evidence obtained from the search of his cell phones seized as a result of the execution of the search warrant at his home on June 13, 2024, [Doc. 69], and on the next day, he orally requested a continuance of the pretrial conference, see [Docket entry dated 01/28/2025], which Judge McBath granted for "good cause shown" on the same day, thereby rescheduling the pretrial conference for January 31, 2025, and ordering that the period between

January 28 and January 31, 2025, be excluded under the Speedy Trial Act since the "ends of justice served by granting the continuance outweigh[ed] the best interest of the public and [ Adesayo] in a speedy trial," [Doc. 70 at 1-2]. At the pretrial conference held on January 31, 2025, Judge McBath scheduled an evidentiary hearing on Adesayo's motions to suppress for March 14, 2025, [Docket entry dated 01/31/2025; Doc. 71]; however, on March 13, 2025, Adesayo filed a motion to recuse Judge McBath when it was discovered that testimony during the evidentiary hearing may overlap with a prior investigation that she handled as a prosecutor, [Doc. 76], and Judge McBath granted this motion and recused herself from the case on this same day, [Doc. 77]. The case was reassigned to the undersigned, see [Docket entry dated 03/13/2025], and the evidentiary hearing was rescheduled for May 14, 2025, with the period between March 14 and May 14, 2025, excluded under the Speedy Trial Act upon a finding that the "extension [was] warranted because the case was recently assigned to the undersigned and failure to grant the continuance would deny counsel reasonable time necessary for effective preparation, and the interests of justice in granting the extension outweigh the best interests of [ Adesayo] and the public in a speedy trial," [Docket entry dated 03/19/2025].

On May 14, 2025, the Court held an evidentiary hearing on Adesayo's motions to suppress, [Doc. 80]; see also [Doc. 79], and set a briefing schedule, with Adesayo's brief due by June 30, 2025, the government's response due by August 15, 2025, and Adesayo's reply due by August 29, 2025, [Doc. 79]. On June 30, 2025, Adesayo filed his perfected motion to suppress evidence obtained from the border search, [Doc. 81], and on August 13, 2025, the government filed a motion for an extension of time to respond to Adesayo's motions due to trial deadlines and other matters in other cases, [Doc. 82]. On August 25, 2025, the Court granted the government's motion, extended the deadline for the government to respond to August 29, 2025, and for the defendant to reply to September 12, 2025, and ordered that the period between August 15 and September 12, 2025, be excluded under the Speedy Trial Act, finding the "extension of time [was] warranted because due to the press of other business, the prosecutor require[d] additional time to prepare the government's response, and the interests of justice in granting the extension outweigh[ed] the interests of [ Adesayo] and the public in a speedy trial." [Doc. 83 at 1-2]. Thereafter, the government responded to Adesayo's motions, [Docs. 86 & 87], and on September 10, 2025, Adesayo filed a motion for an extension of time to file his reply brief due to the press of other cases, [Doc. 89], which the Court granted "for good cause shown" on September 15, 2025,

extending the time for Adesayo to file his reply to September 26, 2025, and ordering that the time period between September 12 and September 26, 2025, be excluded under the Speedy Trial Act, finding that the "extension of time [was] warranted because due to the press of other business, counsel for [Adesayo] require[d] additional time to prepare her reply, and the interests of justice in granting the extension outweigh[ed] the interests of [Adesayo] and the public in a speedy trial," [Doc. 90 at 1-2]. On September 26, 2025, Adesayo filed his reply briefs. [Docs. 91 & 92].

On October 27, 2025, the undersigned issued a Report, Recommendation, and Order on Adesayo's suppression motions, [Doc. 94],[9] and on November 5, 2025, Adesayo filed a motion for an extension of time to file objections due to the press of other cases, [Doc. 97], which the Honorable Mark H. Cohen, United States District Judge for the Northern District of Georgia, granted on the same day, extending Adesayo's time to object to November 17, 2025, [Doc. 98]. Adesayo filed his objections to the Report, Recommendation, and Order by the extended deadline, [Doc. 99], and on December 17, 2025, Judge Cohen adopted the Report,

---

[9] In the Order for Service of the Report, Recommendation, and Order, the Court excluded the fourteen days allowed for filing objections under the Speedy Trial Act. [Doc. 94 at 2]. The Court also certified the case ready for trial. [Id. at 28-29].

Recommendation, and Order, [Doc. 100], and he ordered that the time period between October 27 and December 17, 2025, be excluded under the Speedy Trial Act, finding the delay was "for good cause, and the interests of justice in considering [Adesayo's] objections to the Report and Recommendation ruling on his pretrial motions to suppress outweigh[ed] the right of the public and the right of [ Adesayo] to a speedy trial," [id. at 18-19]. On January 15, 2026, Judge Cohen scheduled Adesayo's trial to begin on March 17, 2026, and he ordered that the time between December 17, 2025, and March 17, 2026, be excluded under the Speedy Trial Act because the "interests of justice in continuing the trial substantially outweigh[ed] the right of the public and the right of [ Adesayo] to a speedy trial[.]" [Doc. 102 at 1-2].

On February 2, 2026, both parties filed motions *in limine*, [Docs. 107 & 109], and responses were filed on February 16 and February 17, 2026, [Docs. 110 & 111]. On February 25, 2026, Judge Cohen entered an Order on these motions, [Doc. 122]; however, while these motions were pending, a probation officer filed a petition for action on conditions of pretrial release, [Doc. 112], and the Honorable Christopher C. Bly, United States Magistrate Judge for the Northern District of

Georgia, scheduled a hearing for February 26, 2026,[10] which was subsequently continued to March 2, 2026, [Docs. 125 & 126; Docket entries dated 02/20/2026, 02/24/2026, & 02/26/2026]. Following the hearing on March 2, 2026, Judge Bly revoked Adesayo's bond and ordered him detained. [Docs. 133 & 134].

On March 3, 2026, a grand jury returned a second superseding indictment against Adesayo and Igbe that added money laundering conspiracy and money laundering charges against Adesayo based on conduct that occurred beginning no later than July 2025 and continuing through about September 2025. [Doc. 136].[11] On March 10, 2026, Adesayo filed a motion to continue the trial scheduled for March 17, 2026, explaining, among other things, that he had issued subpoenas

[10] On February 26, 2026, the government filed a motion to revoke bond and detain Adesayo based on new criminal conduct. [Doc. 127].

[11] Specifically, the second superseding indictment charged that while Adesayo was on pretrial release, he "opened bank accounts in the names of [] corporate entities, including U&I, at multiple financial institutions . . . specifically for the purpose of receiving funds acquired from fraud, including business scams"; that "fraudulent funds were deposited into or transferred to bank accounts opened in the names of corporate entities controlled by [ Adesayo] and other conspirators"; that when the funds were received and deposited into the bank accounts, Adesayo and others "quickly dispersed and attempted to disperse those illegally obtained funds by making interstate transfers to other bank accounts not associated with the fraud schemes, and by making cash or check withdrawals" in an attempt to conceal the source of funds obtained illegally; and that as a result of the money laundering conspiracy scheme, Adesayo and others "laundered and attempted to launder over $27,000 in fraud proceeds." [Doc. 136 ¶¶ 32-44].

to numerous businesses for records in February 2026, but that many companies had not yet responded and that it did not appear the records would be obtained sufficiently in advance of trial. [Doc. 151]. On March 12, 2026, Adesayo was arraigned on the second superseding indictment, [Doc. 154], and on March 17, 2026, Judge Cohen granted the motion to continue the trial date, rescheduled the trial for July 28, 2026, and ordered that the time period between March 10 and July 28, 2026, be excluded under the Speedy Trial Act since the "interest of justice in continuing the trial substantially outweigh[ed] the best interest of the public and [ Adesayo] in a speedy resolution of this matter," [Doc. 156 at 1-3]. On April 2, 2026, Adesayo obtained new counsel, [Doc. 159], who moved to reconsider Adesayo's detention, [Doc. 164]. Judge Bly denied this motion on May 18, 2026. [Doc. 167].

On June 8, 2026, Adesayo filed a host of pretrial motions, including the present motion for speedy trial, [Docs. 170, 171, 172, 173, & 174], and after this Court set an expedited briefing schedule, see [Docket entry dated 06/18/2026], the government filed its response to Adesayo's motion for speedy trial, [Doc. 179], and Adesayo has filed a reply in support of his motion for speedy trial, [Doc. 185], and he also filed a motion to dismiss for violation of his Sixth Amendment right

to a speedy trial, [Doc. 187]. Adesayo's motions for speedy trial and to dismiss, [Docs. 173 & 187], are now ripe for ruling.[12]

## II. DISCUSSION

Adesayo has filed a motion for speedy trial, [Doc. 173], in which he seeks "dismissal of all charges with prejudice as the remedy for the government's violation of [his] constitutional right to a speedy trial," [id. at 1]. Specifically, Adesayo contends that because he "has been under federal criminal accusation for approximately twenty-one months[,] from the filing of the [f]irst [s]uperseding [i]ndictment on June 11, 2024, through the filing of the [s]econd [s]uperseding [i]ndictment on March 3, 2026, without trial," and that he "has consistently desired a prompt resolution of the charges and hereby formally asserts his right to a speedy trial," the charges against him should be dismissed as violative of the Speedy Trial Act and his Sixth Amendment rights. [Id. at 1-2].[13] He contends that

---

[12] The Court will enter a separate Order on Adesayo's pending motions for a bill of particulars and for disclosure of criminal history. [Docs. 171 & 172]. Additionally, on July 8, 2026, a third superseding indictment was returned against Adesayo and Igbe, charging the same thirty-four counts as the second superseding indictment, with the only apparent change being the amount of the deposit alleged in Count Thirty-Four. See [Doc. 188].

[13] With respect to the Speedy Trial Act, Adesayo "requests that the Court determine the amount of non-excludable time that has elapsed under the Act and schedule this matter for trial at the earliest practicable date." [Doc. 173 at 2]. He

the "government's decision to pursue a superseding indictment with new charges rather than proceed to trial on the original charges demonstrates that the delay is attributable to prosecutorial decisions to continue investigating." [Id. at 1].

The government responds that the Court should deny Adesayo's motions because he "is not entitled to dismissal under the Speedy Trial Act or on constitutional speedy trial grounds." [Doc. 179 at 2]. In particular, the government contends that although Adesayo "fails to raise any specific statutory speedy trial violation," a "review of the docket establishes that if any non-excludable days have elapsed, the amount is at most six days, and no statutory speedy trial violation has occurred." [Id. at 1, 3, 5-12 (emphasis omitted)]. The government also maintains that because co-defendant Igbe "is an absent defendant whose whereabouts are unknown and have not been ascertained through reasonable due diligence and who is attempting to avoid apprehension or prosecution," and

---

also asserts that to "the extent any continuances have been granted, [he] objects to any further delay not supported by specific findings required by the Act." [Id.]. With respect to the Sixth Amendment, Adesayo contends that the "length of [his] detention, coupled with the ongoing pendency of the charges, weighs in favor of prompt adjudication of this matter" and that the "continued delay risks prejudice to the defense, including the fading memories of witnesses, difficulties in locating evidence, and impairment of [his] ability to assist in trial preparation while incarcerated," [id. at 2-3], and he also filed a separate motion to dismiss for violation of his Sixth Amendment right to a speedy trial, in which he reiterates, and in some instances, expands on, these arguments, [Doc. 187].

Adesayo has been properly joined with Igbe and no motion to sever has been filed or granted, the "speedy trial clock as to Adesayo has not even begun to run because all time since his arraignment is excluded." [Id. at 3-5]. The government further maintains that to the extent Adesayo objects to the Court's prior ends-of-justice continuances due to a lack of specific findings on the record, the Court can do so prior to ruling on the instant motions, and that even if there is a Speedy Trial Act violation, dismissal without prejudice is the proper remedy. [Id. at 12-16]. Finally, the government maintains that Adesayo is not entitled to dismissal under the Sixth Amendment. [Id. at 17-25].

Adesayo has filed a reply, [Doc. 185], in which he maintains that the government's "reliance on . . . Igbe's fugitive status to exclude all time since arraignment ignores binding precedent requiring reasonableness of delay"; that the government's "ends-of-justice exclusions lack the contemporaneous findings required by statute and Supreme Court precedent"; and that "even if statutory compliance were achieved, the constitutional violation under *Barker v. Wingo* remains clear and requires dismissal with prejudice," [id. at 1]. For the reasons that follow, Adesayo's motions, [Docs. 173 & 187], are due to be denied.

**A. Speedy Trial Act**

The Speedy Trial Act provides in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. . . .

18 U.S.C. § 3161(c)(1). "Accordingly, the speedy trial clock begins to run upon the later date of the indictment or the defendant's first appearance," however, "[i]n a case with codefendants, the time period under the Speedy Trial Act begins to run as to all defendants on the date of the last defendant's arraignment or appearance." United States v. Goodman, 36 F. Supp. 2d 947, 950 (M.D. Ga. 1999) (citation omitted). "The clock runs continuously until the date of trial unless the statute or case law provides an exclusion of time in the calculation." Id.[14] "If a defendant is

[14] For example, the Speedy Trial Act recognizes that certain delays are excludable from the 70-day clock, including but not limited to, "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"; "delay resulting from transportation of any defendant from another district . . ., except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable"; "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court"; "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time has not run and no motion for severance has been granted"; and "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the

not brought to trial within the time limit required by [§] 3161(c) as extended by [§] 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). "When a court determines that a violation of the Speedy Trial Act has occurred, dismissal may be with or without prejudice." United States v. Silas, Case No. 7:20-CR-2 (HL), 2020 WL 5995592, at *2 (M.D. Ga. Oct. 9, 2020) (citation omitted).

In his motion for speedy trial, Adesayo "requests that the Court determine the amount of non-excludable time that has elapsed under the [Speedy Trial] Act," and he also asserts that "[t]o the extent any continuances have been granted, [he] objects to any further delay not supported by specific findings required by the

---

[g]overnment, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," though "[n]o such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(1)(D), (h)(1)(F), (h)(1)(H), (h)(6), (h)(7)(A). Thus, the "70-day period does not necessarily mean 70 consecutive calendar days, as the Speedy Trial Act sets forth certain periods of time that are to be excluded in computing the time within which the trial must commence." United States v. Burke, 673 F. Supp. 1574, 1575 (N.D. Ga. 1986) (citations omitted), aff'd, 856 F.2d 1492 (11th Cir. 1988) (per curiam). "Also, any period of time that is excludable as to one defendant is excludable as to all co-defendants." United States v. Harris, CR 624-10-1, 2026 WL 1618571, at *1 (S.D. Ga. June 5, 2026) (citation omitted).

Act." [Doc. 173 at 2]. In response, the government states that while Adesayo "made no effort to determine if more than 70 non-excludable days have elapsed, [it] . . . has," and that a "review of the docket establishes that if any non-excludable days have elapsed, the amount is at most six days, and no statutory speedy trial violation has occurred." [Doc. 179 at 3 (emphasis omitted)]. In particular, the government shows that Adesayo and Inegbedion were both arrested on June 13, 2024, that Adesayo was arraigned on the same day and released on bond, that the government moved to detain Inegbedion and a detention hearing was held on June 18, 2024, and that the time period between June 13 and June 18, 2024, was therefore automatically tolled under the Speedy Trial Act. [Id. at 5 (citations omitted) (citing 18 U.S.C. § 3161(h)(1)(D))]. Because Inegbedion was ordered removed to this district on June 27, 2024, and he had his initial appearance here on July 17, 2024, ten days to transport would have been automatically excluded, but the clock had already stopped on June 25, 2024, when both the government and Adesayo filed pretrial motions, [Docs. 26, 28, & 32], and therefore, "only six non-excludable days elapsed from June 19 through June 24, 2024," and because "various pretrial motions have been pending or the Court has entered ends-of-

justice continuances based on numerous motions filed by Adesayo," the "speedy trial clock has not run since June 25, 2024," [Doc. 179 at 6 (emphasis omitted)].[15]

Adesayo contends that the government's argument that "multiple ends-of-justice continuances exclude all time since June 25, 2024," fails "because the district court did not make the contemporaneous findings required by 18 U.S.C. § 3161(h)(7)(A) and binding Supreme Court precedent." [Doc. 185 at 4]. Essentially, Adesayo argues that the multiple continuance orders did not pause the speedy trial clock because they did not contain the necessary findings in support of the ends-of-justice language included in these orders. See [id.]. The government responds that there "have been multiple continuances granted in this case, and each order granting the continuance referenced or cited the ends of justice," as well as "confirmed that the continuance was being granted based on the underlying motion for continuance, which set forth the reasons why the continuance should be granted." [Doc. 179 at 13 (citation omitted)]. Thus, the government maintains

---

[15] Indeed, according to the Court's Speedy Trial calculator, only eleven non-excludable days have elapsed; however, the calculator did not take into account the period between June 14 and June 18, 2024, which was automatically tolled under the Speedy Trial Act since the government moved to detain Inegbedion and his detention hearing was held on June 18, 2024, [Doc. 179 at 5]; see also [Doc. 32], and thus, the government's calculation of six non-excludable days appears to be correct and Adesayo has not shown otherwise, see generally [Docs. 173 & 185].

that in "combination with the reference to the ends of justice and citation to the Speedy Trial Act, there is sufficient evidence in the record indicating that the court did consider the factors identified by the statute when it granted the continuance," and that even if "more is needed," the Court may "put its findings on the record before ruling on the motion for speedy trial." [Id. (alteration, footnote, citation, and internal marks omitted)].

A "district court may grant a continuance . . . when the 'ends of justice' support the continuance." United States v. Ammar, 842 F.3d 1203, 1206 (11th Cir. 2016) (citing 18 U.S.C. 3161(h)(7)(A)). "To do so, the district court must consider certain factors," and after considering these factors, the "district court is required to set forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of a continuance outweigh the best interests of the public and the defendant in a speedy trial." Id. (alterations, citation, and internal marks omitted). "Considering this provision, the Supreme Court found in [Zedner v. United States, 547 U.S. 489 (2006),] that the Act requires express findings, and without on-the-record findings, there can be no exclusion of time past the 70-day requirement because the Speedy Trial Act, with procedural strictness, demands on-the-record ends-of-justice findings." Id. (alteration, footnote, citation, and internal marks omitted). That is, "a defendant's agreement

to waive the protections of the Act cannot, by itself, justify an ends-of-justice continuance because the public interest in a speedy trial is also protected by the Act," and the "best interests of the parties—and even those of the court—cannot alone justify deviation from the Act's requirements, absent the determination that those interests outweigh the public interest," and accordingly, the "district court must make on-the-record findings that the ends of justice served by granting the continuance outweigh the defendant's and the public's interests in a speedy trial." Id. at 1206-07 (emphasis, footnote, citations, and internal marks omitted). And, "a trial court should put its findings regarding an ends-of-justice continuance on the record at least by the time it rules on the defendant's motion to dismiss for a speedy trial violation." Id. at 1207 (emphasis and citation omitted).

The following ends-of-justice continuances were entered in this case:

- June 26, 2024, Order, granting Adesayo's unopposed motion for an extension for good cause shown and excluding time from June 25 through August 6, 2024, [Docs. 28 & 30];

- August 16, 2024, Order, granting Adesayo's unopposed motion to reopen the period of time to file pretrial motions and to continue the pretrial conference for good cause shown and excluding time from August 14 through October 29, 2024, [Docs. 48 & 49];

- October 16, 2024, Order, granting Adesayo's unopposed motion for an extension of time to file pretrial motions and to continue the pretrial conference for good cause shown and excluding time from October 15 through December 3, 2024, [Docs. 53 & 55];

- November 27, 2024, Order, granting Adesayo's unopposed motion for an extension of time to file pretrial motions and to continue the pretrial conference for good cause shown and excluding time from November 27, 2024, through January 29, 2025, [Docs. 61 & 62];

- January 28, 2025, Order, granting Adesayo's unopposed oral motion to continue the pretrial conference for good cause shown and excluding time from January 28 through January 31, 2025, [Doc. 70];[16]

- March 19, 2025, Docket entry rescheduling the evidentiary hearing and excluding time from March 14 to May 14, 2025, since the case was recently reassigned to the undersigned and failure to grant the continuance would deny counsel reasonable time necessary to prepare, [Docket entry dated 03/19/2025];

- August 25, 2025, Order, granting the government's unopposed motion to continue its response deadline to Adesayo's motions to suppress for good cause shown and excluding time from August 15 through September 12, 2025, due to the press of other business necessitating additional time for the prosecutor to prepare the response, [Docs. 82 & 83];

- September 15, 2025, Order, granting Adesayo's unopposed motion to continue the deadline for his reply brief for good cause shown and excluding time from September 12 through September 26, 2025, due to defense counsel needing additional time to prepare her reply, [Docs. 89 & 90];

---

[16] On January 27, 2025, Adesayo filed pretrial motions to suppress, [Docs. 68 & 69], and an evidentiary hearing was scheduled and ultimately held on May 14, 2025, [Docs. 79 & 80], and following post-hearing briefs, [Docs. 81, 86, 87, 91, & 92], the Court issued a Report, Recommendation, and Order on these motions on October 27, 2025, [Doc. 94], which was ultimately adopted by Judge Cohen on December 17, 2025, [Doc. 100], after considering Adesayo's objections, [Doc. 99]. Thus, the period from January 27 through December 17, 2025, was automatically tolled under the Speedy Trial Act. See 18 U.S.C. § 3161(h)(1)(D), (h)(1)(H).

- December 17, 2025, Order, adopting the Court's Report, Recommendation, and Order, and excluding time from October 27 through December 17, 2025, because the delay was for good cause in considering Adesayo's objections, [Doc. 100];

- January 15, 2026, Order, setting trial for March 17, 2026, and excluding time from December 17, 2025, through March 17, 2026, [Doc. 102]; and

- March 17, 2026, Order, granting Adesayo's unopposed motion to continue trial and excluding time from March 10 through July 28, 2026, the rescheduled trial date, [Docs. 151 & 156].

Although Adesayo contends that the Orders in this case contain only conclusory references to "Ends of Justice," which does not "satisfy the statute's explicit requirement that the court 'set forth' its 'reasons,'" [Doc. 185 at 5-6 (citation omitted)], the reasons for the ends-of-justice continuances put forth by defense counsel and the government in the multiple unopposed motions, and relied upon by the Court in its multiple Orders granting the same for good cause shown and because the interests of justice outweighed the best interest of the public and Adesayo in a speedy trial, fall within the factors a court shall consider when deciding whether to grant an ends-of-justice continuance, see 18 U.S.C. § 3161(h)(7)(B)(i)-(ii), (iv) (stating factors to be considered include "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice";

"[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established"; or "[w]hether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the [g]overnment continuity of counsel, or would deny counsel for the defendant or the attorney for the [g]overnment the reasonable time necessary for effective preparation, taking into account the exercise of due diligence"). In these instances, it is clear that the continuances were designed to allow Adesayo continuity of counsel and to avoid prejudice, [Docs. 28 & 30]; to allow new defense counsel additional time to receive and review discovery and file pretrial motions, [Docs. 48 & 49]; to allow Adesayo's counsel adequate time to discuss options with Adesayo, to review discovery, to file pretrial motions, and "for effective representation, which may prevent a miscarriage of justice," [Docs. 53, 55, 61, & 62]; to allow counsel reasonable time to effectively prepare for the evidentiary hearing upon the reassignment of the case to the undersigned, [Docket entry dated 03/19/2025]; to allow the government additional time to prepare its response to the pending pretrial

motions, [Docs. 82 & 83]; to allow Adesayo's counsel additional time to prepare her replies in support of the motions to suppress, [Docs. 89 & 90]; and to allow Adesayo's counsel to adequately prepare for trial, [Docs. 151 & 156]. Thus, the Court "complied with the letter and spirit of the Speedy Trial Act, and therefore the exclusion[s are] valid." United States v. Carthen, Case No. 2:15-cr-511-KKD-GMB, 2016 WL 3892475, at *3 (M.D. Ala. June 20, 2016), adopted by 2016 WL 3883440, at *1 (M.D. Ala. July 18, 2016); see also Chase v. United States, Criminal No. 1:08–CR–0133–TWT–GGB, 2013 WL 772798, at *4 (N.D. Ga. Feb. 4, 2013) (citation omitted) (rejecting petitioner's argument that the district court's orders were deficient because they did not specify the reasons for the continuances since it was "clear from the record that the district court had valid reasons for finding that the continuances were in the interests of justice," including "to allow for continuity of counsel or to allow counsel the reasonable time necessary fo[r] effective preparation"), adopted by 2013 WL 772781, at *1 (N.D. Ga. Feb. 28, 2013); Deverso v. United States, Nos. 2:09–cv–660–FtM–29SPC, 2:05–cr–034–FtM–29SPC, 2011 WL 550205, at *18 (M.D. Fla. Feb. 9, 2011) (finding "time was [] excludable under the Speedy Trial Act," since each of the court's orders granting defendants' "multiple continuances in order to prepare the case" were upon a finding of "good cause and that the ends of justice served by granting a continuance outweighed

the best interest of the public and defendant in a speedy trial"). However, "even if [Adesayo] is correct that the reasons supporting the ends-of-justice continuance are not presently stated on the record, the Court may do so at any time before it rules on the motion to dismiss the indictment." United States v. Archible, CRIMINAL ACTION NO. 1:19-CR-410-TWT-CCB, 2020 WL 6489311, at *3 (N.D. Ga. Sept. 16, 2020) (citations omitted), adopted by 2020 WL 6487328, at *1 (N.D. Ga. Nov. 4, 2020); see also United States v. Fonseca, No. 22-13152, 2023 WL 7272320, at *3 (11th Cir. Nov. 3, 2023) (per curiam) (citation omitted) ("The district court need not make its findings regarding an ends-of-justice continuance contemporaneously with granting the continuance so long as the findings are on the record by the time the court rules on the defendant's motion to dismiss for a speedy trial violation."). "Thus, [Adesayo's] assertion that the record presently lacks the required on-the-record findings fails to take into account the Court's ability to state those findings at any time prior to ruling on the present motion[s]." United States v. McLester, CRIMINAL ACTION NO. 1:21-CR-00188-MHC-LTW, 2023 WL 3871723, at *3 (N.D. Ga. Mar. 20, 2023), adopted by 2023 WL 3224349, at *4 (N.D. Ga. May 3, 2023). "In other words, until the District Judge rules on the instant [m]otion[s] . . ., the Court can provide reasons for its ends-of-justice

continuance[s, to the extent it is necessary.]" Id.[17] Accordingly, because only six "days of non-excludable time [] have passed since [Adesayo's] . . . arraignment," and "the District Judge can still provide reasons for [the] ends-of-justice

[17] Adesayo's reliance on United States v. Elkins, 795 F.2d 919 (11th Cir. 1986), to support his contention that "retroactive findings are impermissible and that the district court must make contemporaneous findings when granting the continuance," [Doc. 185 at 5], is misplaced. In fact, the Eleventh Circuit in Elkins specifically stated that a court "need not enunciate its findings when it grants the continuance," but that "there must be sufficient evidence in the record indicating that it did consider the factors identified by the statute when it granted the continuance," 795 F.2d at 924 (citation omitted), which is the case here. Moreover, almost all of the continuances in this case were at the request of Adesayo, and "[d]efendants cannot be allowed to request continuances and then claim a speedy trial violation after such continuances are granted." United States v. Jimenez-Mendez, No. 2:19-cr-00151-1, 2021 WL 688743, at *10 (E.D. Pa. Feb. 23, 2021) (citations and internal marks omitted); see also United States v. Dubose, CRIMINAL ACTION NO. 20-453-1-2-3, 2022 WL 1136730, at *3 (E.D. Pa. Apr. 18, 2022) (alterations, citation, and internal marks omitted) (explaining that a "defendant's speedy trial claim can be rejected when the delay was caused by a continuance requested by the defendant, because defendants should not be permitted to abuse the system by requesting continuances and then arguing that their rights have been violated because the continuances they acquiesced in were granted"). Indeed, "this Court had no reason to suspect that [Adesayo] opposed the ends-of-justice continuance[s] . . . because [] he . . . [never] filed an objection to [the] Order[s.]" Jimenez-Mendez, 2021 WL 688743, at *10 (citation omitted). And, the "fact that [Adesayo] now has different counsel does not change this determination because an attorney's requests for and agreement to continuances exclude them from the days counted towards the Speedy Trial Act clock," and "[n]otably too, it was not until [a little over two months] after new counsel entered an appearance . . . that the instant [m]otion[s were] filed," id., at *11 (footnote, citations, and internal marks omitted), which is "clearly inconsistent with [Adesayo's] earlier position," Zedner, 547 U.S. at 504 (citation omitted).

continuances[, to the extent necessary]," this "case does not exceed the 70-day requirement for a violation of the Speedy Trial Act." Id., at *3.[18] Thus, Adesayo is not entitled to dismissal under the Speedy Trial Act.[19]

---

[18] The government also argues that because Igbe "is an absent defendant whose whereabouts are unknown and have not been ascertained through reasonable due diligence and who is attempting to avoid apprehension or prosecution," and "there has been no action by Adesayo or the Court to sever Igbe," the "speedy trial clock as to Adesayo has not even begun to run because all time since his arraignment is excluded." [Doc. 179 at 4-5 (footnote omitted)]. Adesayo asserts that this argument fails because the "statute does not create an automatic, indefinite exclusion merely because co-defendants are joined," but rather, "it requires the court to determine whether the period of delay is reasonable under the circumstances." [Doc. 185 at 2 (citations omitted)]. The Speedy Trial Act excludes from computation a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). If "the speedy trial clock for a co-defendant is not running because the co-defendant is at large and therefore 'absent' . . ., the speedy trial clock for the defendant himself, under § 3161(h)(6), generally stops running as well." United States v. Woodley, 484 F. App'x 310, 315 (11th Cir. 2012) (per curiam) (unpublished) (citation omitted). There is a "strong judicial and legislative policy favoring joint trials," id. (citation and internal marks omitted), and Igbe "has never been arraigned or appeared before a federal magistrate or district court judge, and there has been no action by Adesayo or the Court to sever Igbe," though the government acknowledges that "when Adesayo's trial begins on July 28, 2026, Igbe will effectively be severed from the case," [Doc. 179 at 5 & n.1]. Thus, the "inquiry, then, is to determine whether, under the circumstances of this case, the delay . . . [is] reasonable." United States v. Tobin, 840 F.2d 867, 869-70 (11th Cir. 1988). "Alternative approaches can be used in determining whether a particular delay was reasonable[:]" (1) "reasonableness is judged from the totality of the circumstances prior to trial," and "the purpose of the delay is considered to determine whether the delay was necessary to achieve its purpose," or (2) "whether the delay caused actual prejudice to the defendant, particularly in terms of impairing his ability to defend

**B. Sixth Amendment Right to Speedy Trial**

"The federal constitution guarantees the right to a speedy trial." United States v. Treisback, Criminal Action No. 2:12–CR–00026–RWS, 2014 WL 2003031, at *4 (N.D. Ga. May 14, 2014) (citation and internal marks omitted), adopted at *1. "Sixth Amendment speedy trial rights attach at the time of arrest or indictment,

---

himself." Id. at 870 (citations and internal marks omitted). Since there has been no violation of the Speedy Trial Act for the reasons already discussed, the Court need not reach this issue, but briefly notes that "[u]nder both approaches, . . . the delay in this case [appears] reasonable" since "the delay was necessary in an unsuccessful attempt to achieve a joint trial," and Adesayo "has failed to allege any substantial prejudice resulting from the delay," especially considering "that at no time during this delay did [he] move to sever his case." Id. (footnotes and internal marks omitted); see also Harris, 2026 WL 1618571, at *1 (finding delay from August 2024 through the date of the decision in June 2026, while a co-defendant "remained at large" was reasonable, particularly since defendant had not filed a motion for severance and there was no evidence that he had suffered any actual prejudice due to the delay); United States v. Pennick, 10-CR-191-A, 2016 WL 4089192, at *4 (W.D.N.Y. Aug. 2, 2016) (finding that "because one codefendant with whom the [d]efendant was joined for trial had not yet appeared, and because the [d]efendant chose not to move to be severed for trial from this codefendant, the speedy trial clock . . . had not started, and the [d]efendant fail[ed] to carry his burden to establish that his rights under the Speedy Trial Act were violated"), aff'd, 713 F. App'x 33 (2d Cir. 2017) (unpublished); United States v. Douglas, No. CR507-015, 2009 WL 773598, at *2 (S.D. Ga. Mar. 20, 2009) (finding "no non-excludable days ha[d] run as to [d]efendant [] because [his co-defendant was] still a fugitive").

[19] While the government also "argues that if the indictment is due to be dismissed, the dismissal should be without prejudice," the Court "declines to further address this argument in light of the recommendation that [Adesayo's] motion[s] be denied." Archible, 2020 WL 6489311, at *3 n.1; see also [Doc. 179 at 14-16].

whichever comes first, and continue until the date of trial." Id. (citation and internal marks omitted). "A defendant's Sixth Amendment right to a speedy trial cannot be quantified into a specific number of days or months," but "must be evaluated under the particular circumstances of each case using a balancing test which weighs the conduct of both the government and the defendant." United States v. Spaulding, 322 F. App'x 942, 945 (11th Cir. 2009) (per curiam) (unpublished) (citation omitted). "Whether a defendant's Sixth Amendment right to a speedy trial has been violated is a mixed question of law and fact." United States v. Ogiekpolor, 122 F.4th 1296, 1304 (11th Cir. 2024) (citation omitted). And, "[a]lthough compliance with the Speedy Trial Act does not bar Sixth Amendment speedy trial claims, it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to a speedy trial has been violated." United States v. Crittenden, CASE NO. 4:20-CR-7 (CDL), 2020 WL 5223303, at *3 (M.D. Ga. Sept. 1, 2020) (alterations, citation, and internal marks omitted).

The Supreme Court has established four factors to be considered in deciding whether a defendant's constitutional right to a speedy trial has been violated: "(1) whether the delay before trial was uncommonly long; (2) whether the government or the defendant is more to blame for that delay; (3) whether, in due course, the

defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice as a result of the delay." United States v. Duke, Criminal Action No. 4:11–CR–004–HLM–WEJ, 2011 WL 1811439, at *2 (N.D. Ga. Apr. 27, 2011) (footnote and citation omitted) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)), adopted by 2011 WL 1833213, at *5 (N.D. Ga. May 12, 2011); see also United States v. Lamar, 562 F. App'x 802, 805 (11th Cir. 2014) (per curiam) (unpublished) (citations omitted); United States v. Bibb, 194 F. App'x 619, 622 (11th Cir. 2006) (per curiam) (unpublished) (citation omitted). "When balancing the *Barker* factors, courts must articulate how heavily each factor weighs against the identified party." Duke, 2011 WL 1811439, at *3 (internal marks omitted) (quoting United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006)). And, "[i]n the Eleventh Circuit, a defendant generally must show actual prejudice unless the first three factors . . . all weigh heavily against the government." Id. (last alteration in original) (citations and internal marks omitted); see also Ogiekpolor, 122 F.4th at 1305 (citation omitted); Bibb, 194 F. App'x at 622 (citation omitted).

Adesayo asserts that his "Sixth Amendment right to a speedy trial has been violated by the approximately twenty-one month delay between the [f]irst [s]uperseding [i]ndictment and the [s]econd [s]uperseding [i]ndictment, during which no trial occurred." [Doc. 173 at 3]. In particular, Adesayo maintains that

the "twenty-one month delay between indictments, attributable entirely to the government's prosecutorial decisions, violates [his] Sixth Amendment right to a speedy trial under the four-factor balancing test established in *Barker*," and thus, this Court "should dismiss all charges with prejudice as the appropriate remedy for [his] constitutional right violation." [Doc. 187 at 1-2 (citations omitted)]. In response, the government contends that while the first *Barker* factor weighs against it, the remaining factors weigh against Adesayo, and his "constitutional challenge [therefore] fails." [Doc. 179 at 17-25]. The Court will address each of the Barker factors and the parties' arguments with respect to each factor.

**1. *Length of the Delay***

The first factor of the balancing test, the length of the delay, "serves as a double [i]nquiry" in that first, it is a "threshold inquiry that the defendant must satisfy in order for [the court] to weigh the remaining three factors," and second, the court must "examine[] the extent to which the delay stretches beyond the bare minimum needed to satisfy the threshold showing of presumptive prejudice." United States v. Villarreal, 613 F.3d 1344, 1350 (11th Cir. 2010) (citations and internal marks omitted); see also United States v. Oliva, 909 F.3d 1292, 1298 (11th Cir. 2018) (per curiam) (citations omitted) (explaining that the "length of the delay[] serves a triggering function: it must first be satisfied for the court to analyze

the other factors"). "The length of the delay itself weighs against the government, incrementally increasing in weight as the delay becomes increasingly protracted, and a particularly lengthy delay may also affect [the court's] analysis of the fourth [*Barker*] factor." Villarreal, 613 F.3d at 1350 (citations omitted).

The length of the pretrial delay is determined by "calculat[ing] the time that elapsed between when the Sixth Amendment right attached until trial (or, until the pretrial motion to dismiss on this ground is determined)." Id. (citation and internal marks omitted). Adesayo's speedy trial right attached in June 2024, see id., and the government concedes that the approximate 21-month delay is a presumptively prejudicial period of delay that triggers the remainder of the Barker analysis, [Doc. 179 at 17-18 (citation omitted)]; see also United States v. Cadet, 521 F. Supp. 2d 1351, 1354 (S.D. Fla. 2007) (citations and internal marks omitted) (explaining that "[d]elays exceeding one year are generally found to be presumptively prejudicial"). "This factor, therefore, weighs against the government," Villarreal, 613 F.3d at 1351, but the government contends that it "does not weigh heavily against the government given the reasons for the delay," [Doc. 179 at 18]. Indeed, the Eleventh Circuit has "explained that even when the length of delay is presumptively prejudicial, it does not weigh heavily against the government unless the second factor, the reason for the delay, also weighs against

the government," Ogiekpolor, 122 F.4th at 1305 (citations omitted); see also United States v. Vargas, 97 F.4th 1277, 1290 (11th Cir. 2024) (citations omitted) (explaining that "it is particularly necessary to examine the length of the delay alongside the reasons behind it because there were different forces at work for different parts of the delay"); United States v. Stapleton, 39 F.4th 1320, 1327 (11th Cir. 2022) (emphasis and citations omitted) (explaining that while the four-year delay weighed against the government and triggered the *Barker* analysis, the "length of delay doesn't weigh heavily against the [g]overnment unless the reason for the delay also weigh[ed] against the [g]overnment"). Thus, the Court turns to the reasons for the delay.

**2. *Reasons for the Delay***

"The government bears the burden of explaining the reason for the delay." Spaulding, 322 F. App'x at 945 (citation omitted). "Different reasons for delay are accorded different weight in the *Barker* analysis," and therefore, "the reasons for delay must be carefully analyzed to see who created the delay and whether that delay was an unacceptable manipulation or an acceptable incident of the criminal process." United States v. Jones, No. 1:05-cr-617-WSD, 2007 WL 2071267, at *21 (N.D. Ga. July 19, 2007) (citations omitted), adopted at *3; see also United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997). In analyzing the second factor, the

Eleventh Circuit has noted that "[g]overnment actions that are tangential, frivolous, dilatory, or taken in bad faith weigh heavily in favor of a finding that a speedy trial violation occurred."[20] Bibb, 194 F. App'x at 622 (alteration in original) (citation and internal marks omitted). However, "delays that occur for valid reasons . . . will not be accorded heavy weight against the [g]overnment," and "negligence is a more neutral act that should not be weighed as heavily as bad faith." Id. (citations and internal marks omitted).

Adesayo argues that "the delay in this case resulted entirely from the government's prosecutorial decision to continue investigating and file a superseding indictment with new charges rather than proceed to trial on the charges in the [f]irst [s]uperseding [i]ndictment." [Doc. 187 at 5-6]; see also [Doc. 173 at 3; Doc. 185 at 8]. He contends that the "government possessed sufficient evidence to charge detailed money laundering transactions in June 2024, as demonstrated by the specificity of the [f]irst [s]uperseding [i]ndictment, which alleged transactions occurring between April 2020 and September 2021," but that "[d]espite having this evidence, the government chose to hold the case open for twenty-one months to investigate and charge additional conduct allegedly

[20] "For example, the government may not deliberately delay a trial in order to weaken a defendant's case." Spaulding, 322 F. App'x at 946 (citation omitted).

occurring between July 2025 and September 2025," and that "this decision reflects a prosecutorial choice to prioritize expanding charges over respecting [Adesayo's] speedy trial rights." [Doc. 187 at 6]. However, the government maintains that because the "filing of a superseding indictment does not reset the speedy trial clock as to the original charges," it "could not gain any tactical advantage, or otherwise act in bad faith, by superseding the indictment"; that "investigating and charging additional criminal conduct, particularly conduct that occurred while Adesayo was on pretrial release, serves an important public interest"; that "[e]vidence that Adesayo was charged in the [f]irst [s]uperseding [i]ndictment and released on bond are material to Counts 33 and 34, thus superseding the indictment to join these counts was proper and avoided duplicating evidence in two trials, which saved judicial resources"; that Adesayo's "decision to engage in additional conduct after he was arraigned on the [f]irst [s]uperseding [i]ndictment should be weighed heavily against him, rather than the government"; and that the "delay was largely the result of Adesayo's multiple continuance requests, including his motion to continue the trial, which was not based on the [s]econd [s]uperseding [i]ndictment but rather due to the need to obtain responses to subpoenas that were served in February 2026." [Doc. 179 at 19-20 & n.10 (emphasis and citations omitted)]. Thus, the government asserts that "[b]ecause

this second *Barker* factor does not weigh against the government, the first *Barker* factor, the length of the delay, does not weigh heavily against the government," [id. at 20-21 (citation and internal marks omitted)], and the Court agrees.

The record in this case shows that following Adesayo's arraignment in June 2024, the case proceeded with the expiration of only about six non-excludable days under the Speedy Trial Act, and it is undisputed that almost all of the continuances were largely the result of Adesayo's requests, which included a motion to continue the trial. See [Docs. 28, 30, 48, 49, 53, 55, 61, 62, 70, 89, 90, 97, 98, 151, & 156]. More importantly, the second superseding indictment includes new charges against Adesayo based on conduct that occurred from July 2025 through September 2025, see [Doc. 136], but that does not establish that the government was aware of this conduct when it occurred or that it had sufficient evidence to bring the additional charges any sooner than it did. Under the circumstances of this case, "[t]wenty-one months is not unreasonable given that the [second] superseding indictment arises out of new, unrelated conduct that hadn't yet occurred at the time of the initial indictment," and "it is clear that any delay . . . is attributable to [d]efendant's own conduct, which has included repeated requests for continuances . . ., [a] request[] to continue the trial setting, . . . repeatedly hiring new defense counsel," and engaging in additional conduct while on pretrial release. United States v.

Ganaway, Case No. S1-4:20CR00271AGF (SPM), 2022 WL 2235650, at *6 (E.D. Mo. June 22, 2022). Thus, the Court finds that this factor does not weigh against the government, and therefore agrees that as a result, the first Barker factor does not weigh heavily against the government.

**3. *Assertion of Right to a Speedy Trial***

The "third Barker factor is whether and in what manner the defendant has asserted his right to a speedy trial." United States v. Kirkman, CRIMINAL CASE NO. 1:21-cr-00454-WMR-RGV, 2024 WL 5316857, at *36 (N.D. Ga. May 29, 2024) (citation omitted), adopted sub nom. United States v. Shackelford, CRIMINAL CASE NO. 1:21-cr-00454-WMR-RGV, 2024 WL 5145502, at *14 (N.D. Ga. Dec. 17, 2024). "A defendant's failure to timely assert his constitutional right to a speedy trial is weighed heavily against the defendant, while a prompt assertion of the right may weigh heavily against the government." United States v. Louis, 146 F.4th 1328, 1338 (11th Cir. 2025) (citation and internal marks omitted). "A defendant's assertion of his speedy trial right is often entitled to strong evidentiary weight in determining whether a defendant is being deprived of the right, though this is because a timely demand for a speedy trial often supports an inference that the defendant was not at fault for the delay and that the delay prejudiced the defendant." McLester, 2023 WL 3871723, at *5 (emphasis, citation, and internal

marks omitted). "Courts are entitled to attach a different weight to different circumstances of the defendant's demand." Id. (citation and internal marks omitted).

Adesayo maintains that "it is easily discernible that [he] expressly invokes and asserts his constitutional right to a speedy trial," since he "has consistently desired a prompt resolution of the charges and formally asserts that right." [Doc. 187 at 7]. Adesayo also maintains, contrary to the record in this case, that he "did not seek continuances or delay," but that the "government unilaterally chose to continue investigating and file a superseding indictment rather than proceed to trial," and that he "now formally asserts the speedy trial right and requests dismissal of all charges as the appropriate remedy." [Id.]. The government counters that "[m]issing from [Adesayo's] discussion, . . . is any acknowledgement or explanation for delaying three months after continuance of his trial before filing the instant motion." [Doc. 179 at 21]. In particular, the government points out that Adesayo "waited three months following return of the [s]econd [s]uperseding [i]ndictment to first assert his speedy trial right"; that he "also affirmatively requested that the trial be delayed until he could obtain the subpoenaed records and collect his own records in response to a government subpoena that had been served on February 2, 2026"; that his "multiple requests for continuance

substantially contributed to the delay, demonstrating that Adesayo did not actually seek a speedy trial"; and that "[n]ow, only after he has been detained based on new criminal conduct (and even months after his detention began), does [he] request a speedy trial, but he readily sought delay after delay while on bond." [Id. at 21-22 (footnotes omitted)]. Thus, the government contends that this factor "does not weigh heavily against the government and, if anything, weighs against Adesayo based on his three-month wait to file this motion after the alleged Speedy Trial Act violation in March 2026 and his multiple requests for continuances." [Id. at 22 (citation omitted)].

The Court finds that this factor "does not weigh heavily against the government" since Adesayo "filed multiple motions for extensions of time," did not "file the instant motion, the first to affirmatively assert a constitutional violation of his speedy trial rights, until [June 8, 2026], . . . [nearly] two years after being taken into federal custody," Kirkman, 2024 WL 5316857, at *37 (citations omitted), and three months after the government filed the superseding indictment and Adesayo sought a continuance of the trial date, [Docs. 20, 136, 151, & 156]. Therefore, because the first three Barker factors do not uniformly weigh heavily against the government, the Court "must evaluate the fourth factor—whether [Adesayo] suffered actual prejudice by the delay." United States v. Lopez-Giraldo,

CRIMINAL ACTION NO.: 1:17-CR-395-MLB-JKL, 2021 WL 6804068, at *12 (N.D. Ga. Nov. 4, 2021) (citations omitted), adopted by 2021 WL 6072449, at *9 (N.D. Ga. Dec. 23, 2021).

**4. *Actual Prejudice***

"If, as here, the first three factors do not weigh heavily against the government, the defendant generally must demonstrate actual prejudice to succeed on his speedy trial claim." Villarreal, 613 F.3d at 1355 (citation omitted). The Court assesses "the prejudice suffered by the defendant in light of the three interests of the defendant the speedy trial right was intended to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." Id. (citation and internal marks omitted). Of these three interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. (citation and internal marks omitted). The Court "remain[s] mindful that the passage of time makes it more difficult to demonstrate actual prejudice with complete precision." Id. at 1356 (citations omitted). However, "[m]ere conclusory allegations are insufficient to establish actual prejudice." United States v. Palanco, No. 24-10257, 2025 WL 1024791, at *9 (11th Cir. Apr. 7, 2025) (per curiam) (citation and internal marks omitted).

Adesayo asserts that he has "suffered prejudice through prolonged anxiety and concern from criminal accusation, restriction of liberty through pretrial release conditions, and the filing of new charges alleging violation of those conditions." [Doc. 173 at 3]. Specifically, Adesayo asserts that he "has been subject to oppressive incarceration since February 26, 2026, when his bond was revoked,"[21] in addition to the "restrictive bond conditions [he was subjected to] for over twenty months before his detention"; that he has "suffered anxiety and concern due to the pendency of serious criminal charges for over two years"; that his "defense has been impaired by the delay," since the "passage of time inevitably dims memories and makes it more difficult to locate witnesses and reconstruct events"; and his "ability to assist in trial preparation has been significantly impaired by his detention." [Doc. 185 at 11-12].

The government contends that Adesayo cannot show actual prejudice, asserting that he "has not been subject to oppressive incarceration," especially considering he "was on bond for 21 months before it was discovered that he committed new criminal conduct while on pretrial release," and that by "the time

[21] Adesayo's conditions of pretrial release were modified on February 26, 2026, to include home incarceration with GPS electronic monitoring pending his bond revocation hearing, [Doc, 126], but his bond was not actually revoked until March 2, 2026, [Doc. 133].

of his trial on July 28, he will have been detained for less than five months—half the time at issue in *Barker*"; that "[a]nxiety and concern are likely present in every case, but this alone does not demonstrate prejudice"; and that "[a]ctual prejudice cannot be shown through conclusory allegations of harm or impairment" and his assertions "in conclusory fashion that the delay risks prejudice to the defense," is insufficient. [Doc. 179 at 23-24 (alteration, citations, and internal marks omitted)]. Therefore, the government maintains that because Adesayo cannot show actual prejudice, his "constitutional challenge fails." [Id. at 25].

Although Adesayo first asserts that he has been subject to oppressive incarceration since the Court revoked his bond, [Doc. 185 at 11], "he has not demonstrated . . . that the conditions under which he [is] held or the length of his confinement [has] rendered the delay a constitutional violation," United States v. Dunn, 345 F.3d 1285, 1297 (11th Cir. 2003). Indeed, Adesayo "has not shown that his prison conditions are anything beyond those that necessarily attend imprisonment." Kirkman, 2024 WL 5316857, at *38-39 (citations and internal marks omitted) (finding defendant failed to show actual prejudice where he alleged his pretrial incarceration had been oppressive because he was "housed in a room for 23 hours each day, with only brief access to the outdoors" and he had "meager access to the law library, so he [was] severely limited in his ability to

review his defense documents," as well as that his "health ha[d] precipitously declined"); see also United States v. Alexander, Case No. 3:20-cr-0026, 2024 WL 3299758, at *14 n.22 (D.V.I. July 2, 2024) (citations and internal marks omitted) (explaining that courts have found fourteen and a half months was not *per se* oppressive and that "by failing to provide proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment," defendants could not "demonstrate prejudice"). Moreover, Adesayo "himself[] is the source of most of the delay," and "[w]hen a defendant is responsible for much of the prejudice he complains of, he cannot leverage that prejudice in his favor." United States v. Nash, Case Number 24-cr-20246, 2026 WL 1432397, at *7 (E.D. Mich. May 21, 2026) (citation and internal marks omitted).

In addition, with regard to Adesayo's assertion that he has "suffered anxiety and concern due to the pendency of serious criminal charges for over two years," [Doc. 185 at 11], his "conclusory allegations of anxiety are not sufficient to establish that he suffered actual prejudice resulting from delay," Kirkman, 2024 WL 5316857, at *39 (citations and internal marks omitted). Similarly, while Adesayo generally asserts that the lengthy time that has passed "dims memories and makes it more difficult to locate witnesses and reconstruct events," [Doc. 185 at 11], "[c]onclusory allegations of prejudice, including allegations of witnesses' faded

memories, are insufficient to constitute proof of actual prejudice," Kirkman, 2024 WL 5316857, at *38 (citation omitted). In short, Adesayo has not shown that his "ability to present a defense has been hindered." United States v. Bell, 546 F. Supp. 3d 1136, 1144 (S.D. Fla. 2021). The Eleventh Circuit "has consistently held that conclusory assertions of prejudice, including unsubstantiated allegations of witnesses' faded memories, are insufficient to constitute proof of actual prejudice." United States v. Hayes, 40 F.3d 362, 366 (11th Cir. 1994) (citations omitted); see also United States v. Holland, CRIMINAL CASE NO. 1:17-cr-00234-AT-CMS, 2018 WL 8838858, at *16 (N.D. Ga. July 27, 2018) (citation omitted) (finding that the defendant's "claims of general prejudice from faded memories and the inability of several witnesses . . . to recall specific details due to the passage of time" were "general conclusory allegations" that "fail[ed] to satisfy the burden of showing actual prejudice"), adopted by 396 F. Supp. 3d 1210 (N.D. Ga. 2019); United States v. Philippe, CASE NO. 05-20874-CR-ALTONAGA, 2017 WL 1035518, at *7 (S.D. Fla. Mar. 17, 2017) (citation omitted); United States v. Gunn, Nos. 3:00cr48/LC/CJK, 3:09cv129/LC/CJK, 2011 WL 3812655, at *7 (N.D. Fla. June 13, 2011) (citation omitted), adopted by 2011 WL 3812661, at *1 (N.D. Fla. Aug. 26, 2011). "Thus, [Adesayo] has failed to show that the delay resulted in specific prejudice to his defense." United States v. Aleman, CRIMINAL ACTION NO.

1:08-CR-223-2-WSD-CMS, 2017 WL 1950363, at *10 (N.D. Ga. Jan. 17, 2017), adopted by 2017 WL 816174, at *9 (N.D. Ga. Mar. 2, 2017), aff'd, 723 F. App'x 817 (11th Cir. 2018) (per curiam) (unpublished). The fourth factor therefore weighs in the government's favor, and Adesayo's motions, [Docs. 173 & 187], are due to be denied.

## III. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Adesayo's pending motions for speedy trial and to dismiss, [Docs. 173 & 187], be **DENIED**.

**IT IS SO RECOMMENDED** this 15th day of July, 2026.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE